CORNELIUS LALLEY, Executor, Appellee, v. W. A. SPRAGUE, Sheriff, Appellant.

**EXECUTION:** Wrongful Execution—Persons Entitled to Damages.
1   Record reviewed, where a judgment creditor had levied upon and sold certain corn, in satisfaction of a judgment against a tenant farmer, and *held* that the judgment creditor was liable for damages for conversion, because the title to the corn was not in the tenant, at the time of the levy, but was in the landlord, who had taken the corn in payment for rent of the land on which said corn was raised.

**SALES:** Validity—Title and Possession of Seller. A transfer by a
2   tenant to his landlord, of corn grown on the rented land, in payment for rent due on the land, is not invalidated by the fact that no notice of said sale was given to the judgment creditor of the tenant, according to the provisions of the Recording Act (Ch. 352, Sec. 2, 38 G. A.), when the tenant did not retain actual possession of the corn, but placed it in an elevator, to await a favorable market.

*Appeal from Adair District Court.*—H. S. DUGAN, Judge.

FEBRUARY 12, 1924.

ACTION to recover damages for conversion of 1,392 bushels of corn by defendant sheriff by levy and sale under execution for judgment creditor. The jury returned verdict for plaintiff, and judgment was entered thereon. Defendant appeals.— *Affirmed.*

*Lynch & Byers,* for appellant.

*A. M. Fagan,* for appellee.

ARTHUR, C. J.—I. Plaintiff, the owner of a 160-acre farm in Adair County, leased said farm for the year beginning March 1, 1920, as claimed by plaintiff, to Marietta Hardin. The Hardins lived upon and cultivated the farm during said leasehold period and the year following. The corn in controversy was raised on the farm during the leasehold period ending March 1, 1921. In August, 1921, the corn in controversy was in crib on the premises. There was a balance due of rental for the

year ending March 1, 1921, of about $1,800. The landlord's lien had not then expired. About the 25th day of August, 1921, the landlord and the Hardins met on the farm, where the corn in question was cribbed, and plaintiff claims that said parties then and there entered into an oral agreement whereby the landlord purchased the 1,392 bushels of corn in controversy, and paid therefor by giving credit upon the rent due for the year ending March 1, 1921, or in satisfaction of the whole amount of the rent due. The corn was shelled, and on the 28th day of September, 1921, was hauled to an elevator and stored. At some prior time, the First National Bank of Fontanelle, Iowa, procured a judgment against E. L. Hardin. On the 19th day of October, 1921, the defendant, as sheriff of Adair County, at the direction of the judgment creditor, levied upon said corn in the elevator, by virtue of an execution issued for the collection of said judgment against E. L. Hardin, and sold it.

On the 22d day of December, 1921, this action was instituted against defendant sheriff to recover damages for conversion of said corn. Plaintiff alleges that the corn in controversy was purchased from Marietta Hardin under a verbal agreement, and that the consideration given was the cancellation of the balance of rent due on the lease for the year ending March 1, 1921; that, by the terms of said oral agreement, the corn was to be delivered at the Davenport elevator in Adair, Iowa; that, in pursuance of said agreement, the corn was delivered to the elevator on or about September 28, 1921; that plaintiff was the owner of the corn from and after said oral agreement and at the time of the levy.

In his answer, defendant denied that the farm was rented to Marietta Hardin, and denied that Marietta Hardin sold said corn to Lalley. Defendant alleged that, when he made the levy on the corn, he had no knowledge, either actual or constructive, that plaintiff was the owner of said corn. Defendant further alleged that:

"Marietta Hardin was not the owner of said corn on or about the 25th day of August, 1921, and that her husband, E. L. Hardin, was the real owner of said corn at said time."

II. On the trial of the case, the Hardins both testified that the farm was leased from Lalley by Marietta Hardin, and not

by E. L. Hardin, her husband; that Marietta Hardin owned all the property on the farm, including the corn in controversy. There was no evidence to the contrary. However, the court instructed the jury to give no consideration to whether the corn was owned by Marietta Hardin or by E. L. Hardin. Defendant could not complain of such instruction.

III. Two ultimate questions were submitted to the jury by the instructions: (1) Was the plaintiff the owner of the corn in question at the time of the levy; and (2) what was the value

1. EXECUTION: wrongful execution: persons entitled to damages.

of the corn levied on, if the jury should determine that plaintiff was the owner at the time of the levy? Under these propositions, the court instructed the jury, in substance, that, if the claimed oral agreement was established by a preponderance of the evidence, and if it was the intention of the parties, plaintiff and the Hardins, to pass title on the 25th day of August, 1921, the date of the claimed oral agreement, then the plaintiff was entitled to recover; but that, if plaintiff had failed to establish said matters by a preponderance of the evidence, plaintiff could not recover. In Instruction 9, the court told the jury:

"It is the claim of the defendant in this case that plaintiff never received title to the corn in question, and that title of said corn all the time remained in the said Hardins. And if the plaintiff has failed to establish title to the corn in himself, or if you find that this corn was delivered at said elevator, and that the said E. L. Hardin, or his wife, had the right to say when the elevator company should sell said corn, even though the proceeds were to be applied on plaintiff's claim for rent, then the plaintiff cannot recover in this case, and your verdict must be for defendant."

Instruction 10 read:

"If the plaintiff in fact purchased this corn of the Hardins, or either of them, on or about the time that he alleges that he did, and that title passed to him at said time, and you so find by a preponderance of the evidence and these instructions, then the mere fact that the said E. L. Hardin stored or deposited this corn with the elevator company in his name will not defeat plaintiff's right of recovery; but, if the said E. L. Hardin did deposit or store this corn in his name, it is a circumstance, or

a fact, that you will have a right to take into consideration in determining the ownership of this corn, and the intent of the parties as to the passing of the title at the time of the alleged sale and purchase between plaintiff and the said Hardins.''

IV. Assignments of error predicated on rulings of the court in overruling motions for directed verdict and for a new trial all center on the instructions' ignoring what appellant claims to be the main issue that should have been submitted to the jury, to wit: ''If there was a valid sale between the parties to the contract, was the sale valid as to the judgment creditor?'' Stated in another way by appellant: ''For the reason that said instructions ignore the law which at times invalidates a contract as to a judgment creditor that is valid between the parties to the contract.''

2. SALES: validity: title and possession of seller.

Appellant claims that the alleged oral sale of the corn in controversy is invalid as against the judgment creditor because, as he says, ''Hardin retained the actual possession of said corn, and said judgment creditor had no knowledge of said sale.'' In support of this position appellant cites the recording act, Section 2, Chapter 352, Acts of the Thirty-eighth General Assembly. We think that said statute does not apply in the instant case, and that appellant's complaints are without merit. *National Bank of Milton v. O'Brien*, 196 Iowa 865. The vendor did not retain actual possession of the corn. The actual, physical location and possession of the corn were in the elevator at the time of the levy, and not in either of the Hardins. The Hardins, or one of them, owed Lalley about $1,800 rental at the time of the claimed oral transfer of the corn. Lalley then had a rental lien on the corn. The corn would pay only a portion of the rental due. The evidence is not altogether clear as to whether credit was to be given upon the rental due for the value of the corn when it should be ascertained by sale of the corn, or be in full satisfaction of the rental. Lalley's testimony is rather to the effect that the corn was to be taken as a credit, and was to be stored in the elevator and sold when a larger price could be obtained, and thus afford the Hardins a greater credit on their debt. The testimony of the Hardins tends to show that the corn was to pay the entire rental due. On either theory the

validity of the sale would not be affected. As the corn was delivered to the elevator, load after load, scale tickets were issued by the elevator manager in the name of E. L. Hardin, and given to him. No direction was given to the manager of the elevator by the Hardins or Lalley, to show in whose name the scale tickets were to be issued, or in whose name the corn was to be stored. After the corn was delivered at the elevator, and before the levy thereon by defendant sheriff, Lalley talked about the transaction with Albers, manager of the elevator. Albers told Lalley that there was going to be a levy on the corn, and Lalley then told Albers, "I says the corn is mine, and Mr. Hardin put it in there in payment of my rent."

Lalley further testified:

· "I knew Mr. Hardin had deposited that corn there in his name to pay my rent, and that he was going to hold it until he could get a good price, so as to make as much money for him as he could out of the corn. I do not mean to say that I at any time told Ed Hardin that I would give him $1,800 worth of notes for $300 worth of corn. I never told him that. But the understanding was that he was to deliver all the corn to me to cancel those notes at such time as he would be able to get them,— rather, to hold the notes until such time as he would be able to meet them."

We find no error in the record that would warrant reversal. Accordingly, the judgment of the trial court is affirmed.— *Affirmed.*

EVANS, PRESTON, and FAVILLE, JJ., concur.